FIBER GLASS SYSTEMS, INC.,
Petitioner, Cross-Respondent.

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross-Petitioner.

No. 86–4278
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1987.

James S. Cheslock, San Antonio, Tex., for petitioner, cross-respondent.

Elliott Moore, N.L.R.B., Helen Morgan, John Welsh, Washington, D.C., for respondent, cross-petitioner.

Louis V. Baldovin, Jr., Dir., Region 23, N.L.R.B., Bob Casey, Houston, Tex., for other interested parties.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

Fiber Glass Systems, Inc. (the "Company") seeks review of the National Labor Relations Board ("NLRB") decision that the Company violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and 158(a)(3), during a union organizational campaign in the Company's manufacturing facility in San Antonio, Texas. The NLRB cross-petitions for enforcement of its order. For the reasons set forth below the challenged 8(a)(1) findings of the Board are VACATED and this case is REMANDED to the NLRB for further proceedings.

In July 1981, the International Union of Electrical, Radio and Machine Workers, AFL–CIO (the "Union") initiated a campaign to organize the Company's employees. A petition for a representation election was filed with the NLRB's Regional Director on March 8, 1982; on April 8, 1982, the Union lost the representation election by a vote of 68 to 29. The Union subsequently filed several election objec-

tions and unfair labor practice charges against the Company.

The administrative law judge ("ALJ") found that the Company had violated section 8(a)(1) by interrogating employees about their union activities and sentiments, by threatening employees with discharge, layoffs, and other reprisals for engaging in union activities, by establishing a new grievance procedure and soliciting grievances to induce employees to refrain from union activities, by creating the impression of employer surveillance of union activities, by asking employees to vote against the union, and by prohibiting union-related discussions during non-work time. The ALJ also found that the Company violated section 8(a)(3) by unlawfully discharging employee Raul Portales for his pro-union activities. The ALJ, however, determined that reinstatement was improper because Portales, after his discharge, but before the election, had threatened a Company employee with a pistol in an effort to induce that employee to vote for the union. Additionally, the ALJ refused to order backpay for the period from the unlawful discharge until the pistol incident, because Portales had falsified his employment application.[1] The ALJ concluded that it was "reasonable to infer that had Portales truthfully answered the questions on his employment application, and had the Company known of his past record, the Company would not have hired him."

The NLRB three-member panel (hereinafter the "Board") essentially adopted the ALJ's findings and conclusions.[2] However, the Board modified the ALJ's decision in two significant respects. First, while it agreed with the ALJ that Portales was not entitled to reinstatement for his unlawful discharge, it found that Portales was enti-

---

**1.** The record indicates that Portales omitted listing the two employers that he worked for immediately preceding his employment with the Company. Portales was employed by Stainless Steel Container Corp. ("SITCO") from February 23, 1981 until he was fired for fighting on May 1, 1981. Portales was also employed by Friedrich Refrigeration before working at SITCO. The record indicates that Portales was discharged by Friedrich in violation of section 8(a)(3). After

his reinstatement, Portales voluntarily left Friedrich as part of a grievance settlement.

**2.** The Board declined to accept the ALJ's determination that the Company unlawfully created the impression of surveillance under § 8(a)(1) in four specific situations, which, it concluded, involved privileged communications with employees not prohibited by § 8(a)(1). This decision was not appealed.

tled to backpay. The Board concluded that the Company failed to "show that it would not have hired Portales but for its reliance on the false information." Consequently, the Board awarded backpay to Portales from the time of his discharge in December 1981 until the pistol incident in April 1982. Second, although the Board affirmed the ALJ's section 8(a)(1) findings and the union's election objections, it determined that a bargaining order was not warranted under *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The Board concluded that the General Counsel failed to demonstrate that the 8(a)(1) violations "were so substantial that their effects cannot be erased by the use of traditional remedies and the question concerning representation raised by the Union's petition cannot be resolved by the preferred method of a fair Board rerun election." Consequently, the Board ordered a second election.

The Company has appealed only four specific 8(a)(1) findings and challenges neither the additional 8(a)(1) findings nor the various election objections. Moreover, the Company does not challenge the finding that the Company violated section 8(a)(3) by discharging Portales; it merely seeks review of the backpay award.

### Section 8(a)(1)

■ Section 8(a)(1) of the National Labor Relations Act makes it unlawful to "interfere with, restrain, or coerce" employees in the exercise of their rights under section 7 of the Act. Employer interviews or "interrogations" become illegal under section 8(a)(1) when "the words themselves or the context in which they are used ... suggest an element of coercion or interference." *NLRB v. Weingarten, Inc.*, 339 F.2d 498 (5th Cir.1964). This Circuit has developed a list of eight factors, commonly known as the *"Bourne"* test, to determine whether an interrogation tends to be coercive or threatening in light of the total circum-

stances. *See TRW, Inc. v. NLRB*, 654 F.2d 307 (5th Cir.1981). These factors are: (1) the history of the employer's attitude toward its employees; (2) the type of information sought or related; (3) the company rank of the questioner; (4) the place and manner of the conversation; (5) the truthfulness of the employee's response; (6) whether the employer had a valid purpose in obtaining the information; (7) if so, whether this purpose was communicated to the employee; and (8) whether the employer assures that no reprisals will be taken if they support the union.

■ Both the ALJ and the Board failed to apply these factors and failed to articulate the bases for its section 8(a)(1) findings. Although this court has repeatedly directed the NLRB to apply the *Bourne* factors, the Board has shown continued reluctance to set forth its legal bases for finding employer questioning coercive or threatening under section 8(a)(1). *See Marathon Le Tourneau Co. v. NLRB*, 699 F.2d 248 (5th Cir.1983); *Dow Chemical Co. v. NLRB*, 660 F.2d 637 (5th Cir.1981); *TRW, Inc. v. NLRB*, 654 F.2d 307 (5th Cir.1981); *TRW–United Greenfield Div. v. NLRB*, 637 F.2d 410 (5th Cir.1981) (Politz dissenting); *Paceco v. NLRB*, 601 F.2d 180 (5th Cir.1979); *Delco-Remy Div., General Motors Corp. v. NLRB*, 596 F.2d 1295 (5th Cir.1979); *Federal-Mogul Corp. v. NLRB*, 566 F.2d 1245 (5th Cir.1978). While this court does not require a "law review article" on each case, "we cannot perform our duty of appellate review without a sufficient exposition both of the facts found and the legal standards considered applicable." *Paceco*, 601 F.2d at 183. Given the Board's refusal to adhere to our guiding precedent we decline to review the challenged interrogations without an articulated rationale for such findings.[3] We, therefore, VACATE the Board's decision and REMAND this case to the Board with instructions to apply the *Bourne* criteria and to articulate the rationale for its conclusions.

---

**3.** We have applied the *Bourne* factors ourselves when the record is sufficiently complete to allow review. *See, e.g., NLRB v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 461 n. 23 (5th Cir.1983). In this case, however, we feel that the most prudent course is to remand this case to the Board for further proceedings.

## Section 8(a)(3)

The Company does not challenge the Board's decision that Portales was unlawfully discharged, however, it does challenge the award of backpay. The ALJ found that backpay was inappropriate because it was reasonable to infer that the Company would not have hired Portales had he truthfully answered the questions on his employment application, and had the Company known of his past record. The Board overruled the ALJ and concluded that the Company failed to affirmatively prove that it would not have hired Portales, but for his falsified employment application. The record does not reflect any attempt by the Company to prove that it would not have hired Portales had it known of his true employment record. However, the Board failed to reconcile its decision with previous Board rulings that made the inference that an employer would not have hired an employee if it had known about the falsified employment application. See *W. Kelly Gregory, Inc.,* 207 NLRB 654 (1973) (denying reinstatement where it was "reasonable to infer" that the employer would not have hired employee as a truck driver had it known that employee falsified his employment application by omitting several driving violations and the fact that he had been discharged by his previous employer because of a "drinking problem"); *National Packing Co.,* 147 NLRB 446 (1964) (adopting trial examiner's decision that found reinstatement and backpay inappropriate because it was reasonable to assume that the employer would not have hired employee if he had given truthful information), *enforcement denied on other grounds,* 352 F.2d 482 (10th Cir.1965); *Southern Airways Co.,* 124 NLRB 749, 752 (1959) (holding backpay inappropriate where employee had "insinuated himself into the Employer's employ by materially false representations of such character that the Employer would not have hired him if he had given truthful information"). Ordinarily, to reduce the opportunity for arbitrariness, a departure from past agency precedents requires at least a reasoned explanation of why this is done. K.C. Davis,

*Administrative Law Text* § 16.01 (1972). Because of the apparent inconsistencies in the Board's approach to this issue we cannot affirm its decision that Portales is entitled to backpay.

### CONCLUSION

We conclude that REMAND of this case to the Board is required for further modification of its order and a determination of the appropriate post-election remedy. We also REMAND this case for further backpay proceedings and direct the Board to allow the Company to present evidence that it would not have hired Portales if he had given a truthful employment history.

VACATED and REMANDED.